249 P.3d 988 (2011)
241 Or. App. 10
In the Matter of the Custody of C.B., nka C.M.M.; and C.B., nka J.D.M., Minor Children.
Dylan M. DIGBY and Shellie M. Digby, Petitioners-Respondents, AND
David MESHISHNEK and Stacy Meshishnek, Respondents-Appellants.
DO070400; A139448.
Court of Appeals of Oregon.
Argued and Submitted November 2, 2010.
Decided February 23, 2011.
D. Eric Woodard argued the cause for appellants. With him on the brief was Kramer & Associates.
No appearance for respondents.
Before ORTEGA, Presiding Judge, and BREWER, Chief Judge, and SERCOMBE, Judge.[*]
BREWER, C.J.
This is an appeal in an action under ORS 109.119 for visitation with two minor children that petitioners filed based on an alleged "child-parent" relationship. The trial court concluded that, although petitioners had not established a child-parent relationship with the children under ORS 109.119(10)(a), they had established a qualifying "ongoing personal relationship" with them under subsection (10)(e). After determining that all pertinent statutory criteria had been established, the trial court awarded petitioners visitation with the children. We reverse.
The material facts are undisputed. The children in this case, C. and J., were born in 2000 and 2001, respectively, to a family plagued by drug abuse, domestic violence, homelessness, neglect, and other problems. As a consequence, the children suffered from emotional and psychological stresses, including post-traumatic stress and attachment disorders. The Department of Human Services (DHS) took custody of the children in November 2002. The children were placed in foster care with petitioner Shellie Digby, who was an acquaintance of the children's birth mother. The parental rights of the birth parents were eventually terminated. Shellie and her future husband, Dylan Digby, considered but rejected the idea of adopting the children. In 2004, the Digbys began discussions with friends and acquaintances in an effort to locate an adoptive placement for the children.
Appellants Meshishnek eventually stepped forward as prospective adoptive parents for the children, and the children began having interactions with the Meshishneks, including weekend visitations. In April 2005, DHS formally selected the Meshishneks as adoptive *989 resources for the children. DHS placed the children with the Meshishneks in May 2005. Shortly thereafter, the Digbys and the Meshishneks took a trip together to Disneyland, which the Meshishneks understood to be a final visit for the children with the Digbys. After the trip, DHS required a blackout period during which the children could not have contact with the Digbys. The children became extremely upset and acted out accordingly. The children last had contact with the Digbys in July 2005.
In May 2005, at DHS's suggestion, the Meshishneks began a course of mental health counseling for the children with Sherry Sullens. Those counseling sessions, which were ongoing at the time of trial in April 2008, produced a marked improvement in the relationship between the children and the Meshishneks. During that period, the children established a strong bond with the Meshishneks.
In June 2006, an adoption judgment was entered, declaring C. and J. to be the children of the Meshishneks. In July 2006, the Digbys filed a motion to vacate the adoption judgment. As part of a settlement of that challenge, the parties stipulated, and, in December 2006, the court in the adoption action ordered, that the children would be evaluated by Dr. Dane Borg, for the purpose of determining whether ongoing contact between the children and the Digbys would be in the children's best interest. Under the terms of the stipulated order, if Borg were to recommend such contact, the Digbys would file the instant petition. In May 2007, the court entered a further order directing Borg to release his report to the parties' attorneys. In that report, Borg recommended that the children have ongoing contact with the Digbys, who then filed this action in June 2007. The court then consolidated this action with the adoption proceeding.
The case was tried to the court in April 2008. At the conclusion of trial, the court made oral findings of fact and conclusions of law, some of which were included in the ensuing judgment. Among its oral conclusions, the court stated:
"[The Meshishnek's counsel] is correct that it is pled that there was a parent-child relationship. I think by definition that's not what we have here. I do find, however, that there was an ongoing personal relationship.
"And so to sort of hurdle the first legal obstacle here, I do find that given the definition of ongoing personal relationship it shall be subsumed in the definition of parent-child relationship. In other words, it is sort of a lesser included."
In the ensuing judgment, the court found that the Digbys had an ongoing personal relationship with the children as defined by ORS 109.119(10)(e). The court further found:
"Based upon the particular needs of these children, Meshishneks have acted outside of the best interest of their children by defying the recommendation of Dr. Dane Borg and not allowing the children contact with [the Digbys] in some form for approximately three years."
The court also found that, "[b]ased upon ORS 109.119(3)(b), visitation and contact rights of petitioners is in the best interests of the children." The court awarded the Digbys periodic physical visitation with the children, telephonic contact, the right to attend the children's school and other public functions, and the right to exchange correspondence and other materials with the children.
On appeal, the Meshishneks raise three assignments of error. Because the second assignment of error is dispositive, we do not address the others. In their second assignment of error, the Meshishneks assert that, as a matter of law, the Digbys did not have a qualifying child-parent relationship with the children under ORS 109.119(10)(a) and that, because the Digbys did not allege in their petition or otherwise assert before the trial court that they had a qualifying ongoing personal relationship with the children under ORS 109.119(1)(e), the trial court erred in sua sponte awarding them visitation under the latter theory.
Under ORS 109.119(10)(a), a "child-parent relationship"
"means a relationship that exists or did exist, in whole or in part, within the six months preceding the filing of an action *990 under this section, and in which relationship a person having physical custody of a child or residing in the same household as the child supplied, or otherwise made available to the child, food, clothing, shelter and incidental necessaries and provided the child with necessary care, education and discipline, and which relationship continued on a day-to-day basis, through interaction, companionship, interplay and mutuality, that fulfilled the child's psychological needs for a parent as well as the child's physical needs. However, a relationship between a child and a person who is the nonrelated foster parent of the child is not a child-parent relationship under this section unless the relationship continued over a period exceeding 12 months."
(Emphasis added.) As the trial court correctly concluded in its oral ruling, the Digbys did not establish a qualifying child-parent relationship in this case, because they did not file an action under ORS 109.119 until June 2007, almost two years after they last had contact with the children. Hanson-Parmer and Parmer, 233 Or.App. 187, 192, 225 P.3d 129 (2010) ("[u]nder the express terms of the statute, to determine whether a child-parent relationship has been established, we examine the six months preceding * * * the date that husband filed his counterclaim under ORS 109.119").
Unlike subsection (10)(a), ORS 109.119(10)(e) does not impose a particular time limitation for commencing an action to establish visitation based on an "ongoing personal relationship." Subsection (10)(e) provides:
"`Ongoing personal relationship' means a relationship with substantial continuity for at least one year, through interaction, companionship, interplay and mutuality."
In short, subsection (10)(e) requires proof that the requisite relationship continued for at least one year, but it does not require that such a relationship have existed immediately preceding the commencement of the action.
The difficulty with applying ORS 109.119(10)(e) in this case is that the Digbys never asserted the existence of an ongoing personal relationship with the children under that subsection. Rather, they alleged in their petition and maintained throughout that they had a child-parent relationship with the children.[1] The court recognized that problem but purported to surmount it by treating an ongoing personal relationship as a "lesser included" relationship that is subsumed within the ambit of a child-parent relationship. Regardless of whether that analogy to the criminal law might otherwise be apt, it overlooks the fact that the legislature imposed different requirements for the temporal existence of the two types of relationships.
Moreover, there is an important difference in the burden of proof between claims under subsections (10)(a) and (10)(e). In order to award visitation based on a child-parent relationship, a court must find by a "preponderance of the evidence" that the presumption under subsection (2)(a) that the legal parent acts in the best interest of the children has been rebutted, ORS 109.119(3)(a), whereas, to award visitation to a person with an ongoing personal relationship with the children, the court must make such a finding by "clear and convincing evidence," ORS 109.119(3)(b). It is axiomatic that a "lesser included" claim cannot require proof of an element based on a more stringent burden of proof than the greater claim.
Because this case was pleaded and tried as a "child-parent" relationship case under ORS 109.119(10)(a), and the undisputed evidence showed that the Digbys did not have a qualifying child-parent relationship with the children, the trial court erred in awarding them relief based on an unpleaded "ongoing personal relationship" theory under ORS 109.119(10)(e).
Reversed.
NOTES
[*] Brewer, C.J., vice Landau, P.J.
[1] Petitioners' position was consistent with that theory throughout the proceedings. At trial, petitioners' counsel told the court that "we want to have the court approve the title of the Digbys as psychological parents."